IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| NICOLE M., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:22-cv-00600 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MARTIN O'MALLEY, | ) | By:   Hon. Thomas T. Cullen |
| Commissioner of Social Security, | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

This social security disability appeal was referred to the Honorable C. Kailani Memmer, United States Magistrate Judge, under 28 U.S.C. § 636(b)(1)(B) for proposed findings of fact and a recommended disposition. Judge Memmer filed a report and recommendation ("R&R") on February 7, 2024, recommending that this court deny Plaintiff Nicole M's ("Nicole") motion for summary judgment, grant Defendant Martin O'Malley's ("Commissioner") motion for summary judgment, and affirm the Commissioner's final decision. Nicole filed timely objections to the R&R, seeking this court's review. On careful review, the court finds the ALJ's decision is supported by substantial evidence. Accordingly, it will overrule Nicole's objections, adopt Judge Memmer's R&R in its entirety, deny Nicole's summary judgment motion, and grant the Commissioner's summary judgment motion.

## I.   BACKGROUND

On September 21, 2020, Nicole filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434 ("the Act"). (R. 18, 157–65.) Nicole alleged that she was disabled as of January 30, 2020, due to a handful of mental-health

problems, including major depressive disorder, dysthymia, anxiety disorder, insomnia, and depression with anxiety. (*See* R. 200.) In reviewing Nicole's application, Disability Determination Services ("DDS") noted additional physical issues that arose while reviewing evidence, including hypertension, acute pain of her right shoulder, and obesity. (R. 76.) DDS denied Nicole's application at the initial and reconsideration levels of state-agency review. (R. 74–93.)

Nicole requested a hearing before an administrative law judge ("ALJ") and, on January 6, 2022, appeared telephonically with her attorney before ALJ Jeffrey J. Schueler. (R. 40–73.) Both Nicole and a vocational expert testified at the hearing. (*Id.*) Following the hearing, the ALJ issued a detailed decision dated March 23, 2022, concluding that Nicole was not disabled within the meaning of the Act from January 20, 2020 through the date of the decision. (R. 35.) In his decision, the ALJ found that Nicole had not engaged in substantial gainful activity since her alleged disability-onset date and had a variety of severe physical and mental impairments, including cervical spine osteoarthritis, shoulder arthropathy, major depressive disorder, generalized anxiety disorder, obsessive-compulsive disorder, agoraphobia, obstructive sleep apnea/insomnia, obesity, and hypertension. (R. 20–21.) The ALJ further concluded that Nicole's impairments, individually or in combination, were not of the severity required for a de facto disability finding. (R. 21 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, & 404.1526).)

Following "careful consideration of the entire record," the ALJ determined that Nicole had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c), with additional limitations. (R. 25.) Specifically, the ALJ found that Nicole "can occasionally push or pull; never climb ladders, ropes, or scaffolds; and frequently climb ramps

or stairs, balance, stoop, kneel, crouch, or crawl." (*Id.*) To accommodate her impairments, the ALJ determined that Nicole "needs a work environment free of fast-paced production requirements such as assembly-line work (where the work of others would be dependent on [her] actions), involving only simple, work-related decisions, few if any workplace changes, no interaction with the public, and occasional interaction with coworkers." (*Id.*)

The ALJ determined that, based on Nicole's RFC, she could not perform her past relevant work. (R. 32–33.) After considering her age, education, work experience, and RFC, the ALJ determined Nicole could perform certain jobs that exist in significant numbers in the national economy, such as automobile detailer, order caller, and office helper. (R. 34–35.) Accordingly, the ALJ concluded that Nicole was not disabled under the Act. (R. 35.)

Following the ALJ's decision, the Appeals Council denied Nicole's appeal. (R. 1–5.) The ALJ's decision, therefore, became the Commissioner's final decision. (R. 1.)

On October 20, 2022, Nicole filed the instant suit challenging the Commissioner's final decision. (Compl. [ECF No. 2].) Nicole filed a motion for summary judgment (ECF No. 18) and the Commissioner's summary judgment motion followed (ECF No 23). On February 7, 2024, Judge Memmer filed her R&R recommending that the court grant the Commissioner's motion, deny Nicole's motion, and affirm the decision of the Commissioner. (R&R at 1 [ECF No. 26].) Nicole filed timely objections (ECF No. 27) and the Commissioner responded in opposition (ECF No. 29). Accordingly, this matter is ripe for review.

- 3 -

## II.   STANDARDS OF REVIEW

### A.  District Court Review of Magistrate Judge Decision

Federal Rule of Civil Procedure 72(b) provides that, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." The objection requirement set forth in Rule 72(b) is designed to "train[] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007) (citing *Thomas v. Arn*, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Id.* at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

*Id.* The district court must determine *de novo* any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

If, however, a party "makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,"

- 4 -

*de novo* review is not required. *Diprospero v. Colvin*, No. 5:13-cv-00088, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (cleaned up) (quoting *Howard Yellow Cabs, Inc. v. United States*, 987 F. Supp. 469, 474 (W.D.N.C. 1997); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982)). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." *Camper v. Comm'r of Soc. Sec. Admin.*, No. 4:08-cv-69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), *aff'd*, 373 F. App'x 346 (4th Cir. 2010); *see Midgette*, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only those portions of the report or specified proposed findings or recommendations to which objection is made.") (cleaned up). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." *Moon v. BWX Techs.*, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), *aff'd*, 498 F. App'x 268 (4th Cir. 2012); *see also Arn*, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed . . . .").

Simply put, rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Objections that simply reiterate arguments raised before the magistrate judge are construed as general objections to the entirety of the report and recommendation. *See Veney v. Astrue*, 539 F. Supp. 2d 841, 844–45 (W.D. Va. 2008). As the court noted in *Veney*:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and

> the district court perform identical tasks. This duplication of time
> and effort wastes judicial resources rather than saving them, and
> runs contrary to the purposes of the Magistrates Act."

539 F. Supp. 2d at 846 (quoting *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). A plaintiff who reiterates her previously raised arguments will not be given "the second bite at the apple she seeks"; instead, her re-formatted brief will be treated as a general objection, which has the same effect as a failure to object. *Id.*

## B. Judicial Review of Social Security Determinations

It is not the role of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In so doing, the court may neither undertake a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), but it is more than a mere scintilla and somewhat less than a preponderance, *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported

- 6 -

by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### III.    NICOLE'S OBJECTIONS

Nicole makes four objections that mirror—at times almost identically—her four assignments of error in her summary judgment brief, essentially reformatting her arguments to assert the R&R made the same errors as the ALJ.[1] (*Compare generally* Pl.'s Obj. [ECF No. 27], *with* Pl.'s Br. Supp. Summ. J. at 16–32 [ECF No. 19].) Despite her counsel's effort to do so, the objection process is not an opportunity for Nicole to take a "second bite at the apple" in hopes that a new judge will be more receptive. *Veney*, 539 F. Supp. 2d at 846; *Ella H. v. Kijakazi*, No. 3:21-cv-804, 2023 WL 1422365, at *1 (E.D. Va. Jan. 31, 2023" ("All seven of the discrete arguments that Plaintiff sets forth in her Objections were raised before and duly considered by the Magistrate Judge. Thus, the Court finds that *de novo* review of the Magistrate Judge's R&R proves unnecessary and review the R&R for clear error only."). Nevertheless, the court will consider each of her objections.

### A.    Renee Nauful, NP's Opinion Evidence

Nicole first takes issue with the R&R's conclusion that the ALJ's treatment of Renee Nauful, NP's ("Nauful") opinion evidence was adequately explained and supported by substantial evidence. Nauful opined, based on counseling sessions with Nicole, that her mental impairments would cause her work limitations to be mostly "marked," and "extreme." (R. 547–51.) After considering Nauful's opinion in relation to Nauful's own observations and the

---

[1] The court incorporates the R&R's detailed facts about Nicole's impairments and medical and procedural history; those facts will not be repeated here unless relevant to the objection under consideration.

record at large, the ALJ found her opinion unpersuasive. (R. 31–32.) Nicole argues generally that the ALJ improperly discarded Nauful's opinion because he "cherry-picked" evidence in assessing the opinion under 20 C.F.R. § 404.1520c.[2] As explained below, the court disagrees.

Specifically, Nicole argues that the ALJ erred in how he weighed evidence when considering the opinion's supportability and consistency, *id.* § 404.1520c(c)(1)–(2), by relying on evidence that supported his conclusion without reconciling his finding with contradictory evidence. Importantly, she does not contest that the ALJ applied the proper legal standard. Instead, Nicole's arguments boil down to a disagreement with how the ALJ weighed the evidence. But even if the court agreed with Nicole's reading of the evidence, it could not reverse the ALJ on that ground. *See Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).

The court finds that the ALJ did not err in finding Nauful's opinion unpersuasive. The ALJ considered the most important factors enumerated in 20 C.F.R. § 404.1520c, and his logical explanation for so finding is supported by substantial evidence. (*See* R. 31–32.)

The ALJ found that Nauful's opinion relied too heavily on Nicole's self-reported symptoms, and the "marked" and "extreme" limitations therein were not supported by Nauful's notes and observations. (R. 31–32.) For example, Nauful's observations reveal that Nicole presented a "depressed" affect at times (*e.g.*, R. 521), but at other times presented a "bright" affect (R. 526). Even when Nicole had a "depressed/sad" affect and she reported symptoms consistent with severe anxiety and depression, Nauful observed that Nicole was

---

[2] Nicole made the same general and specific arguments on brief to Judge Memmer (*see* Pl.'s Br. Supp. Summ. J. at 16–19), and aside from conclusory statements that the R&R made the same errors as the ALJ, does not identify the R&R's specific errors. (Pl.'s Obj. at 1–4.) Indeed, this objection (and the others) could properly be reviewed for clear error. *Jesse S. v. Saul*, No. 7:17-cv-00211, 2019 WL 3824253, at *2 (W.D. Va. Aug. 14, 2019).

cooperative, engaging, and had a logical stream of thought. (R. 521, 530, 534.) The ALJ's conclusion that Nauful's opinion was unsupported by Nauful's own observations is reasonable and supported by substantial evidence.

Next, the ALJ found Nauful's opinion was inconsistent with various pieces of evidence in the record. For example, the ALJ reasoned that Nauful's suggestion about Nicole missing work more than three times per month was inconsistent with her relatively conservative course of outpatient treatment. (R. 31.) The ALJ noted that one of Nicole's previous appointments (with Nauful) lasted only 20 minutes before she was told to follow up in four weeks. (*Id.* (citing R. 561).) The ALJ also cited to a different provider's unwillingness to fill out Family and Medical Leave Act ("FMLA") paperwork for Nicole "given the lack of consistent follow-up with a PCP and that she had not been seen during this month[-]long anxiety concern." (R. 31.) Infrequent visits to a provider can reasonably be seen as a conservative course of treatment, which an ALJ may interpret as undercutting the severity of a claimant's impairments. *See Dunn v. Colvin*, 607 F. App'x 264, 273–74 (4th Cir. 2015). Additionally, the ALJ found evidence that Nicole's mental impairments improved—particularly, that her sleep, mood, and energy level improved at times. (R. 31; *see also* R. 520 ("Nicole indicated she was 'doing better' and felt she was productive and 'getting stuff done.')). The ALJ's conclusion that Nauful's opinion was inconsistent with a conservative course of treatment that led to signs of improvement is supported by substantial evidence.

The final aspect of Nicole's first objection claims the ALJ ignored certain evidence in his analysis. Nicole wanted the ALJ to explicitly consider (1) her PHQ-9 scores that suggested severe depression; (2) other subjective reports; (3) and her frequently depressed affect. (Pl.'s

Obj. at 2–3.) Nicole misconstrues the ALJ's written decision. As to the PHQ-9 scores[3] and Nicole's other subjective allegations, the ALJ noted his belief that Nauful's opinion was based on those self-reported symptoms, and proceeded to explain how other record evidence did not support, and was inconsistent with, those subjective allegations. (R. 32.); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (finding no error in an ALJ discounting a provider's opinion that "was based largely upon the claimant's self-reported symptoms"). As for Nicole's claim that the ALJ did not consider observational evidence of her depressed affect, the ALJ specifically noted that Nicole's mental status during her appointments with Nauful was frequently "largely normal . . . *other than her mood and affect*." (R. 31 (emphasis added).)

At bottom, Nicole's first objection effectively asks the court to usurp the ALJ's prerogative to weigh evidence and resolve evidentiary conflicts. That duty "rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996); *Johnson*, 434 F.3d at 653. Because the ALJ's findings in connection with Nauful's opinion is supported by substantial evidence, Nicole's first objection will be overruled.

## B.   Subjective Allegations

Nicole next objects to the R&R's finding that the ALJ's treatment of her subjective allegations is supported by substantial evidence.[4] For largely the same reason as explained in connection with her first objection—namely, the ALJ's finding that Nicole's self-reports are

---

[3] The PHQ-9 test appears to calculate a score based entirely on the subject's responses to certain questions. (*See, e.g.*, R. 527.) As one court put it, those test scores were "based upon claimant's subjective reports, rather than [the provider's] objective assessments." *Moffat v. Kijakazi*, No. 3:21-cv-129, 2022 WL 2196311, at *13 (N.D.W. Va. May 23, 2022), *R&R adopted*, 2022 WL 2195764 (June 17, 2022).

[4] Nicole's objection discusses only her allegations as they relate to her mental impairments, so the court will limit its review to those allegations.

not always consistent with the bulk of the record is supported by substantial evidence—this objection lacks merit.

When evaluating a disability claimant's symptoms and how they relate to her ability to work, an ALJ must "use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p." *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020). The first step is to consider the objective medical evidence to determine if the claimant has a "medically determinable impairment" that could reasonably produce her alleged symptoms. *Id.* (citing 20 C.F.R. § 404.1529(b)). If so, he must next "assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Id.* (citing 20 C.F.R. § 404.1529(c)). In other words, the second step requires the ALJ to determine whether a claimant actually suffers to the degree she claims.

To guide that inquiry, the ALJ "considers the 'entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.'" *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 360 (4th Cir. 2023) (quoting SSR 16-3P, 2016 WL 1119029, at *4). Among other factors, an ALJ considers the symptoms in relation to the claimant's daily activities and her course of treatment. 20 C.F.R. § 404.1529(c). Ultimately, the ALJ must weigh a claimant's subjective allegations against "the objective medical evidence and other evidence," and "consider[s] whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." *Id.*

Here, the ALJ found that Nicole's mental impairments could reasonably be expected

to cause her alleged symptoms, but he then concluded that her "statements concerning the intensity, persistence, and limiting effects of th[o]se symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 27.) Nicole says that conclusion is not supported by substantial evidence. The court disagrees.

The ALJ thoroughly acknowledged Nicole's various subjective complaints, allegations, and testimony. Indeed, he credited her subjective allegations as "partially consistent with other evidence." (R. 26–27.) But he concluded that the record was not entirely consistent with the extent of the severity of those symptoms. (*Id.*) Nicole identifies several instances where she thinks the R&R and ALJ erred by either mischaracterizing or ignoring evidence. As explained below, her arguments are not persuasive.

First, Nicole claims the ALJ ignored evidence consistent with severe depression, including PHQ-9 scores that indicate severe depression and bolster her subjective allegations. (Pl.'s Obj. at 4–5.) As discussed previously, Nicole misconstrues the nature of a PHQ-9 score given that it is based entirely on the claimant's complaints of depression. *See Moffat*, 2022 WL 2196311, at *13. Even so, the ALJ cited a February 2020 mental examination with her primary care provider in which the ALJ acknowledged that Nicole "endorsed symptoms consistent with severe depression," including a PHQ-9 score of 21 (R. 336), but otherwise "showed normal mood and affect, good judgment and insight, and linear thinking" (R. 27). As the ALJ reasoned, even when Nicole self-reported severe symptoms of depression, other evidence contradicted the severity of her depression.

In a similarly unpersuasive challenge, Nicole asserts the ALJ ignored evidence that her mental impairments worsened steadily, while the ALJ thought the record showed her mental

health ebbed and flowed. The ALJ's interpretation is supported by substantial evidence; for example, Nicole reported she was "doing better," slept better, was more energized, and self-reported an increase in her productivity in an appointment with Nauful in September, 2021, a year after she first applied for disability. (*See* R. 28, 520.)

Next, Nicole takes issues with the ALJ's finding that her conservative course of treatment weighed against her subjective allegations without explaining "exactly what other more radical treatment plaintiff should have had for her mental health impairments." (Pl.'s Obj. at 5.) This argument fails for myriad reasons, not least the fact that Nicole does not cite any support for her argument that the ALJ was responsible for conveying what level of treatment he would have found sufficient to support her allegations. That burden is on Nicole. *See Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The regulations call for the ALJ to consider the course of treatment in this analysis, 20 C.F.R. § 404.1529, and courts regularly affirm an ALJ's finding that a conservative course of treatment militates against a disability finding. *See Stitely v. Colvin*, 621 F. App'x 148, 151 (4th Cir. 2015) (citing *Wall v. Astrue*, 561 F.3d 1048, 1068–69 (10th Cir.2009)) (noting that "conservative medical treatment undermines allegations of disabling symptoms")

Along the same vein, Nicole twice claims the ALJ's interpretation of evidence was incorrect and improperly goes against her subjective allegations. First, Nicole disagrees with the ALJ's interpretation that her primary care provider's reluctance to sign her FMLA paperwork "given the lack of consistent follow-up with a PCP and that [Nicole] had not been seen during [her] month long anxiety concern" shows a conservative course of treatment and undercuts the severity of her mental impairments. (R. 28 (citing R. 338).) Second, she disagrees

with the ALJ's finding that the fact that her self-reported ability to finish reading two books and was able to discuss takeaways (R. 520, 524) undermined some of her previously reported mental limitations (*see* R. 228). The court hardly strains itself in finding the ALJ's interpretations reasonable, and in any event supported by substantial evidence.

Nicole's last argument within this objection alleges that the ALJ erred in the weight it placed on her various daily activities when it was assessing her subjective allegations. (Pl.'s Obj. at 7.) This too is unpersuasive.[5] At the threshold, this argument appears to assign error to an ALJ for following regulatory instructions. *See* 20 C.F.R. § 404.1529(c)(3)(i). Even more, Nicole's objection fails to point specifically to what daily activities the ALJ cited or how he or the R&R erred. (Pl.'s Obj. at 7.) Because Nicole's objection lacks even a modicum of specificity, the court reviews the R&R's treatment of the same argument for clear error and finds none. (*See* R&R at 28–29.)

Even if Nicole's argument presented enough to trigger *de novo* review, the court has no trouble in concluding the ALJ's decision is supported by substantial evidence. If the ALJ relied only on her daily activities in finding her subjective allegations were unpersuasive without also discussing the extent to which she can complete them, she would have a better argument. *See Arakas*, 983 F.3d at 100. But the ALJ *did* consider the extent that she could complete daily activities. For example, he acknowledged that Nicole "tries to help with chores . . . *if . . . her mood allows her to do so*." (R. 26.) The ALJ also credited her testimony that she "can't remember what I've just read. I have to like keep reading the same page over and over." (R. 58; *see* R. 26.)

---

[5] Curiously—and inconsistent with the rest of her argument—Nicole claims that "[i]t is clear from the ALJ's decision that he solely relied upon plaintiff's daily activities in arriving at his conclusion that plaintiff's allegations are not fully supported." (Pl.'s Obj. at 7.) Even a cursory read of the ALJ's decision shows that this is incorrect. In fact, the ALJ's discussion of her daily activities is a minor aspect of his decision.

The ALJ acknowledged that Nicole orders groceries online now because of her "difficulty interacting with others." (R. 26.) The ALJ further cited other daily activities, including that she sometimes enjoys spending time with her family, but other times does not. (R. 23, 28.) And the ALJ considered that Nicole read two books and was able to discuss them with her psychiatrist. (R. 28.) The ALJ then concluded that these daily activities partially undercut Nicole's subjective allegations regarding the intensity of her limitations. This was not error. *See Ladda v. Berryhill*, 749 F. App'x 166, 173 n.4 (4th Cir. 2018).

At bottom, the court agrees with Judge Memmer that the ALJ applied the two-prong test correctly in assessing Nicole's symptoms and allegations. And because the ALJ's conclusion is supported by substantial evidence, this objection will be overruled.

### C.    RFC Findings

Nicole's last two objections cast a wide net. She challenges the ALJ's assessment of her mental and physical impairments while crafting his RFC findings and argues that he did not create a logical bridge between the evidence and his RFC findings. (Pl.'s Obj. at 8–10.) These objections are mainly conclusory, contain little to no analysis, and are devoid of any legal support.

In determining Nicole's RFC, the "ALJ must consider all of the claimant's physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect the claimant's ability to work." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (cleaned up). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P, 1996 WL 374184, at *7; *Mascio v. Colvin*, 780 F.3d 632,

- 15 -

636 (4th Cir. 2015). As distilled by the Fourth Circuit, "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas*, 916 F.3d at 311. The second component requires the ALJ's narrative to "build an accurate and logical bridge" from the evidence in the record to his RFC conclusions. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). That bridge does not need to be perfectly crafted and "specifically refer to every piece of evidence," *Reid v. Comm'r of Soc. Sec. Admin.*, 769 F.3d 861, 865 (4th Cir. 2014), but it does need to allow for "meaningful review," *Mascio*, 780 F.3d at 636.

As discussed below, the ALJ's RFC analysis was proper and none of Nicole's objections are compelling.

### 1.    Mental RFC

Nicole argues that the magistrate judge erred at every step of the substantial evidence review of the ALJ's RFC finding concerning Nicole's mental impairments. The court disagrees and finds, as Judge Memmer did, that the ALJ's RFC finding is legally sound and supported by substantial evidence.

Nicole first claims the magistrate judge erred in concluding that the ALJ adequately explained how Nicole's "moderate limitations in concentrating, persisting, . . . maintaining pace," or "in interacting with others" were accommodated in the ALJ's RFC findings. (Pl.'s Obj. at 8.) Specifically, Nicole asserts the ALJ "failed to explain how plaintiff's ability to concentrate and stay focused during medical appointments or her ability to perform daily activities establish plaintiff can sustain the work activities outlined in the ALJ's RFC findings on a sustained basis over the course of an eight[-]hour workday." (*Id.* at 9.)

The ALJ's analysis contains ample "logical explanation for [the court] to conduct

- 16 -

meaningful . . . review." *Thomas*, 916 F.3d at 312. He explicitly considered Nicole's allegations and ultimately found she had moderate limitations in terms of interacting with others, concentrating, persisting, and maintaining pace. (R. 23.) The ALJ credited that Nicole's claims were supported by some evidence, but explained why other evidence undermined the extent of those limitations, including observations by her medical providers and her daily activities, like driving, online shopping, and reading books. (R. 23–24.) Those observations and activities suggested that her moderate limitations would not prevent her from working in an independent, slow-paced environment consisting of simple decision-making. (*Id.*)

The ALJ also cites Nauful's notes from Nicole's first encounter with her on May 10, 2021, along with other providers' evaluations, in a comprehensive narrative spelling out his RFC finding. (R. 28.) Nauful's first examination of Nicole noted that she "[wa]s able to concentrate and stay[ed] focused in the encounter," found her "[m]emory intact," described her "thought process [as] linear," found she "[w]armed up well to" her new provider and "became increasingly forthcoming as [she] became more comfortable." (R. 539–40.) These observations occurred at a meeting in which Nicole reported her anxiety levels were at 10/10 and her PHQ-9 score was a 24. (R. 538.) With that context, the ALJ noted that Nicole's "observed mental status throughout the period at issue tends to show that she remains capable of performing basic mental work activities as described in the above [RFC] finding." (R. 28.) While Nicole would have preferred even more explanation, the ALJ's bridge between the evidence and his conclusion is sufficient—if Nicole can warm up to a new person, concentrate, and show a linear thought process on days where her depression and anxiety were self-reported as the most severe, it undercuts her allegations that she cannot do any of those things in a

workplace in which her interaction with other people is limited.

Following his RFC analysis, the ALJ concluded that Nicole's limitations mandated "a work environment free of fast-paced production requirements such as assembly-line work (where the work of others would be dependent on [her] actions), involving only simple, work-related decisions, few if any workplace changes, no interaction with the public, and occasional interaction with coworkers." (R. 25.) The court has no trouble reviewing the ALJ's written decision to find his logical explanation for the moderate limitations found in his RFC.

As for Nicole's argument that observations during medical appointments and her daily activities did not show how she could work a full-time job, she reads the ALJ's decision to narrowly and attempts to impose a requirement where there is none. As discussed above, a claimant's ability to interact with her medical provider is just part of the ALJ's assessment of her mental impairment and attendant RFC determination. Indeed, SSR-98p instructs the ALJ to consider such observational evidence as part of the greater determination. *See* SSR 98-8P, 1996 WL 374184, at *7. Moreover, the argument that an ALJ could have offered a more detailed explanation for one piece of evidence does not require an ALJ's otherwise thorough narrative to be disturbed. *See Dunn v. Colvin*, 607 F. App'x 264, 276 (4th Cir. 2015).

Nicole's last argument in this objection is the same as her first objection and challenges the ALJ's finding that Nauful's opinions were unpersuasive. (Pl.'s Obj. at 10.) As discussed in the context of her first objection, the ALJ's finding is supported by substantial evidence, as Nauful's own observational evidence undermined her opinion about the severity of Nicole's limitations. *See supra* III.A.

In short, the ALJ properly considered the relevant evidence and logically explained his

- 18 -

analysis in reaching his conclusion. None of Nicole's arguments persuade the court otherwise, so her third objection will be overruled.

### 2.   Physical RFC

Nicole's last objection contends that "the [R&R] erred in concluding the ALJ's decision includes the narrative discussion required by SSR 96-8p and contains sufficient information to allow the [c]ourt to engage in a meaningful review" of his RFC findings. (Pl.'s Obj. at 10.) She attempts to bolster this general argument by assigning two errors to the R&R: (1) it "ignored the fact that the ALJ failed to make specific findings regarding whether [Nicole's] impairments would cause her to experience episodes of pain necessitating breaks or absences from work, how often these would occur, and the impact on [her] ability to perform work related activities[;]" and (2) it "erred in concluding the ALJ properly found [Nicole's] allegations are inconsistent with the evidence of record and consequently, cannot serve as a basis for his physical RFC findings." (*Id.*)

Nicole made the same arguments to Judge Memmer in her summary judgment brief, (Pl.'s Br. Supp. Summ. J. at 31) and Judge Memmer explained in her R&R why they fail (R&R at 34–37). Nicole "fails to identify any specific error in the magistrate judge's report" and this objection "does not warrant *de novo* review." *Hammack v. Berryhill*, No. 7:16-cv-00314, 2017 WL 4203545, at *3 (W.D. Va. Sept. 21, 2017). Judge Memmer correctly determined that "the ALJ's findings include a comprehensive analysis of Nicole's medical records, the medical opinions, the non-medical evidence, and the ALJ's conclusions" (R&R at 35), and the court's own review of the ALJ's decision finds his physical RFC finding is supported by substantial evidence. The ALJ considered the relevant pieces of physical medical and nonmedical evidence, explained

whether he thought they were persuasive and the limitations they required, and concluded that Nicole could "perform medium work," except that she can "occasionally push or pull; never climb ladders, ropes, or scaffolds; and frequently climb ramps or stairs, balance, stoop, kneel, crouch, or crawl." (R. 25.) The ALJ thoroughly catalogued Nicole's allegations about her physical impairments and explained their persuasion level with other record evidence, before finding she was "limited to a range of medium exertion work." (R. 29.) But, after weighing contradicting evidence that showed Nicole's physical impairments were not as severe as she claimed—including, for example, medical tests that showed her "right shoulder had full range of motion without pain, and [her] strength was normal in her biceps, triceps, deltoids, and rotator cuff"—she needed no additional limitations. (*Id.*) The ALJ's narrative is thorough and contains more than enough information for the court to conduct meaningful review. *See Mascio*, 780 F.3d at 636. In other words, the ALJ engineered a logical bridge from evidence to conclusion.

Nicole's only semblance of a specific objection is that the ALJ erred by not making a specific finding as to whether the pain caused by her physical impairments would require her to take "breaks or absences from work, how often these would occur, and the impact on [her] ability to perform work related activities." (Pl.'s Obj. at 11.) Nicole does not provide support for imposing a requirement of this kind, and an "ALJ is not required to make specific findings related to each of [her] subjective assertions." *Thai L. v. Saul*, No. 7:19-cv-708, 2021 WL 519904, at *8 (W.D. Va. Feb. 8, 2021) (citing *Shinaberry v. Saul*, 952 F.3d 113, 123–24 (4th Cir. 2020)); *Mascio*, 780 F.3d at 636 (rejecting a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis"). Perhaps more telling, Nicole's

objection does not cite to anything in the record that states that her physical impairments require her to take breaks. *See id.*; *see also William T. v. Kijakazi*, No. 7:21-cv-00550, 2023 WL 2644283, at *8 (W.D. Va. Mar. 27, 2023) ("[I]t is not a reviewing court's job to search through a claimant's voluminous medical records to try to find evidence that may lend support to [her] arguments . . . ."). Accordingly, this argument also fails.

In sum, the ALJ's thorough analysis allows the court to meaningfully review his RFC determination and conclude it is supported by substantial evidence. Nicole's objections will be overruled.

### IV. CONCLUSION

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ's decision is supported by substantial evidence. As such, Nicole's objections will be overruled, Judge Memmer's R&R will be adopted in its entirety, Nicole's motion for summary judgment will be denied, and the Commissioner's summary judgment motion will be granted.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 26th day of March, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE